IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Tavo Glenn, #167193                      )
                                         )    Civil Action No.8:08-3078-PMD-BHH
                    Petitioner,          )
                                         )
          v.                             )    **REPORT AND RECOMMENDATION**
                                         )    **OF MAGISTRATE JUDGE**
Jon Ozmint, and Warden of                )
Lieber Correctional Institution,         )
                                         )
                    Respondents.[1]      )
_____  )

        The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code,

Section 2254.  This matter is before the Court on the respondent's motion for summary

judgment.  (Dkt. # 10.)

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial

petitions for relief and submit findings and recommendations to the District Court.

        The petitioner brought this habeas action on September 1, 2008.[2]  On November 7,

2008, the respondent moved for summary judgment.  By order filed November 10, 2008,

pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised

of the summary judgment dismissal procedure and the possible consequences if he failed

to adequately respond to the motion.  On December 8, 2008, the petitioner filed a response

_____

        [1]A prisoner's custodian is the only proper respondent in a habeas corpus action. *See
Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). Therefore, as the Warden is the only
proper respondent in a habeas action, Jon Ozmint should be dismissed from this action.
Accordingly, the undersigned will refer to the Warden as the only respondent throughout
this report.

        [2]This date reflects that the envelope containing the petition was date stamped as
having been received on September 1, 2008, at the Lieber Correctional Institution
mailroom.  (Pet. Attach. # 2.)  *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's
pleading is considered filed when given to prison authorities for forwarding to the district
court).

opposing the respondent's summary judgment motion and his own motion for summary judgment.

## I. PROCEDURAL HISTORY/FACTS

The petitioner is currently incarcerated at the Lieber Correctional Institution.  In November 2001, the petitioner was indicted  for carrying a pistol and in January 2002, he was indicted for armed robbery.  On May 20-22, 2002, the petitioner was tried before a jury with the honorable Gary E. Clary presiding.   At trial, the petitioner was represented by Public Defender Don Thompson.   The petitioner was convicted on both charges and Judge Clary sentenced him to thirty years for the armed robbery and one year for the weapons charge to run concurrently. The petitioner filed a direct appeal.

On appeal, the petitioner was represented by Appellate Defender Tara S. Taggart. In his final brief, the petitioner raised one issue: whether the single person show-up lineup used was unduly suggestive and conducive to irreparable mistaken identification.   On August 27, 2003, in an unpublished opinion, the South Carolina Court of Appeals affirmed the petitioner's convictions.   On September 11, 2003, the petitioner filed a petition for rehearing.  On November 20, 2003, the South Carolina Court of Appeals denied the petition for rehearing.

The petitioner then filed a petition for a writ of certiorari in the South Carolina Supreme Court.   In the petition, the petitioner argued that the Court of Appeals erred in affirming petitioner's convictions where a single person show-up was allowed at trial that was unduly suggestive and conducive to irreparable mistaken identification. On February 3, 2005, the South Carolina Supreme Court denied the petition and the remittitur was sent down  on February 7, 2005.

On March 2, 2005, the petitioner filed an application for post-conviction relief ("PCR"), raising the following grounds for relief:

2

    1) Violation of due process of law;

    2)  Ineffective assistance of counsel; and

    3) Ineffective assistance of appellate counsel

(App. 373; 381.)   Specifically, the petitioner alleged his due process rights were violated because the confrontation for identification was so unnecessarily suggestive and conducive to irreparable mistaken identification. (App. 374).   He alleged trial counsel was ineffective for failing to: thoroughly investigate his case, interview potential witnesses, discuss defense strategy, challenge the admission of evidence relating to carrying a firearm; interview co-defendant or call him as a defense witness, and obtain the transcript from the preliminary hearing.   (*Id.*)   The petitioner alleged appellate counsel was ineffective for failing to raise all issues on appeal and meet with the petitioner after being asked to discuss the case. (App. 374). Specifically, the petitioner asserted that appellate counsel should have argued ineffective assistance of counsel on direct appeal. (App. 378).

On January 10, 2006, an evidentiary hearing was held before the Honorable J. Derham Cole. (App. 387). The petitioner was present at the hearing and represented by attorney N. Douglas Brannon. (App. 387, 422). On June 26, 2006, Judge Cole denied and dismissed with prejudice the petitioner's application for PCR. (App. 422-26).

The petitioner timely appealed the denial of PCR.  On appeal, the petitioner was represented by Appellate Defender Wanda H. Carter.  Carter filed a petition to withdraw as counsel and a *Johnson* petition raising the following issue: whether trial counsel erred in failing to secure an eyewitness identification expert to testify at trial.  The petitioner did not file a pro se petition. On December 19, 2007, the South Carolina Supreme Court transferred the appeal to the South Carolina Court of Appeals.  On May 28, 2008, the South Carolina Court of Appeals denied the petitioner's petition for a writ of certiorari and granted counsel's request to withdraw.  The remittitur was sent down on June 13, 2008.

3

The petitioner filed this habeas action raising the following grounds for relief:

**Ground One:** Violation of due process. U.S.C.A. Const. Amend. 14. Denied due process at trial by admission of unreliable identification evidence.

**Supporting Facts:** The procedure in this case was so unnecessarily suggestive and conducive to irreparable misidentification that petitioner was denied due process of law. Only one live suspect was used when two black males were arrested w/o being an emergency or exigent circumstances. Trial court thought evidence was sufficient for the jury rather than weighing corrupting effect of suggestive procedure, never ruling it to be reliable, then stating next time he'll rule differently, thus not proceeding consistently that fundamental fairness being essential to the concepts of justice.

**Ground Two:** Ineffective Assistance of Counsel

**Supporting Facts:** Trial Counsel failed to represent petitioner within the standard of professional reasonableness as required by defense attorney. Trial Counsel failed to employ an expert witness as requested by petitioner. Trial Counsel failed to investigate victims, whereas motion of discovery contained forms of one of the victim's twin sister with her signature.

(Pet. 6-7.)

The underlying facts were set forth by the South Carolina Supreme Court in its opinion in the petitioner's co-defendant's appeal. *State v. Miller,* 626 S.E.2d 328 (S.C. 2006)(footnote omitted):

About 4:00 p.m. on October 5, 2001, the Alltel Communications store on Floyd Baker Boulevard in Gaffney, South Carolina, was robbed. The perpetrator entered the store with his back to the store's two female employees. As he turned to face the employees, he pulled a black mask over his face, brandished a black handgun, and ordered the employees to fill a bag with money.

The two employees began filling the bag with money from one of the store's cash registers. Keys could not be found to the second cash register and the store safe was found to be empty. Realizing they would not be able to open the second register, the man took both employees into the back of the store and made them lie down on the floor. The employees did as instructed until they heard the front door buzzer. Assuming the robber had left the store, the employees went to the front of the store, locked the door, and called 911.

4

The robbery lasted approximately ten minutes and resulted in a little over four hundred dollars being stolen. When police arrived, the employees described the robber as a black male wearing a blue shirt and dark pants.

Shortly after beginning his 4:00 shift, Trooper Johnnie Godfrey was traveling on Floyd Baker Boulevard near the Alltel store when a vehicle came from his right and cut him off. Trooper Godfrey testified he turned on his blue lights and attempted to pull over the car for the purpose of issuing a warning for improper lane change and failure to yield the right-of-way. The car pulled into a parking lot, but did not stop, instead exiting on another street and heading up the interstate. A pursuit ensued involving officers from several law enforcement agencies.

The fleeing car sideswiped another car and turned off the interstate. A bystander testified she observed the chase and, as the car approached her, she saw a gun tossed from the passenger side window. An officer searched the area where the gun was allegedly thrown and retrieved a black handgun.

The chase ended after the car attempted to make a right turn and ran off the road into a field. The two occupants fled from the car. The driver of the vehicle was quickly apprehended and identified as respondent.

Respondent was placed in the back of Sergeant Mark Gooch's patrol car. Respondent remained in the car for roughly twenty minutes, while detectives and the crime scene unit responded to the scene. Sergeant Gooch testified that while en route to the detention center, respondent commented, "I heard someone say something about a robbery. I don't know anything about a robbery. I wasn't even near an Alltel store." Respondent also questioned what the crime scene officers were doing at the vehicle, and when the sergeant told him they were recovering evidence and asked respondent if he was worried about them finding his fingerprints on the gun, he stated, "my man had a gun." After hesitating, respondent then said, "if you will get a detective to talk to me, I'll tell them what they need to know." Officer Gooch stated that, while respondent was seated in the patrol car, he did not mention a robbery or any charges against him to respondent. He admitted, however, that his police radio was on while respondent was seated in the car, and he had discussed the robbery with other officers outside of the car.

Trooper Godfrey testified he smelled an odor of alcohol on respondent and also suspected he had been using marijuana. Once respondent was transported to the local detention center, a DataMaster test was administered. Based on the DataMaster test, the trooper asked respondent to submit to a urine test and

5

respondent refused. Trooper Godfrey charged respondent with driving under the influence and respondent subsequently pled guilty to the charge.

The passenger from the vehicle was apprehended shortly after respondent and identified as Tavo Glenn. He was wearing a blue shirt and dark pants when apprehended. Glenn had several items in his possession when he was arrested, including a little over four hundred dollars, a pair of latex gloves, and eight to ten rounds of .380 caliber pistol ammunition. A search of the automobile produced a .380 caliber silver handgun, found under the passenger seat.

Shortly after Glenn's apprehension, Officer Chris Skinner of the Gaffney Police Department arrived and instructed one of his officers to take Glenn back to the Alltel store to be identified. When Glenn arrived at the Alltel store, the officers took him out of the patrol car and placed him in front of the vehicle, twenty to twenty-five feet from the front door of the store. Glenn was handcuffed and was the only civilian in the area, standing among police officers. The two employees positively identified Glenn as the perpetrator of the robbery at that time and they reiterated that pre-trial identification at respondent's trial. Thereafter, both Glenn and respondent were charged with armed robbery.

## II. **APPLICABLE LAW**

### A. Summary Judgment Standard

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

6

242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**B. HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or

7

> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

## C. EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

I. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be

filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

ii. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time.  Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

10

. . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

iii. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

iv. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental

11

miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

### III. <u>DISCUSSION</u>

**Procedural Bar**

Initially, the respondent contends that the issue raised in the second part of Ground Two was not properly exhausted and is now procedurally barred. The undersigned agrees.

In Ground Two, the petitioner alleges trial counsel was ineffective for failing to retain an expert witness on identification and investigate one of the eyewitnesses' twin sister. The second allegation was raised before the PCR judge, but the PCR judge did not rule on this issue and the petitioner did not file a Rule 52 or 59 motion and request a ruling on this issue. *Al-Shabazz v. State,* 527 S.E.2d 742, 747 (S.C. 2000)(holding "party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order.") Because the PCR judge did not address this issue in his order of dismissal, the South Carolina Supreme Court would not have been able to review this issue. *McCullough v. State,* 464 S.E.2d 340, 341 (S.C.1995); *Pruitt v. State*, 423 S.E.2d 127, n. 2 (S.C. 1992)(holding issue must be raised to and ruled on by the PCR judge in order to be

preserved for review).  Accordingly, this issue is barred from habeas review.  *Coleman v. Thompson,*  501 U.S. 722 (1991).

When a state prisoner has defaulted his claims in state court, habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman,* 501 U.S. at 750.  The petitioner has not set forth any argument alleging cause and prejudice. Accordingly, this issue is procedurally barred.

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta.  *See Karsten v. Kaiser Foundation Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.  Accordingly, the undersigned will not discuss the merits of the second issue in Ground Two as it is procedurally barred.

**Ground One**

In Ground One, the petitioner asserts that his due process rights were violated by the admission of unreliable identification evidence.  Specifically, the petitioner alleges the trial court erred by denying his motion to suppress the victims' identification of him as the perpetrator of the robbery.

There was only one perpetrator inside the store during the robbery. The petitioner was arrested after he and another person, Robert Miller, led police on a high speed chase shortly after the robbery. The chase began near the robbery location. After his arrest, the

13

police took the petitioner back to the Alltel store and, while handcuffed, the petitioner was walked from the back of a marked police car through the parking lot to a position where he could be seen by the victims. Both victims then identified the petitioner as the person who had committed the robbery.

Trial counsel moved to suppress the identifications during an in camera hearing. During the in camera hearing, both victims testified about the robbery. They testified that the robber entered the store backwards and pulled down a tight, black mask over his face. Both noted that the robber was wearing a long, blue shirt, and that he was wearing dark pants. One of the witnesses testified that he may have been wearing jeans. Both witnesses testified that the identification occurred within thirty minutes of the robbery.

The first victim stated that she was able to identify the petitioner as the robber because "[w]ell, he was wearing the same clothes he had on and he has a very – his cheekbones showed through the mask. I mean, it was a tight mask and that's what I noticed." (App. 47-48). Similarly, the second victim testified that she knew the petitioner was the robber because "[w]ell, I seen the side of his face when he came in and he has very distinctive cheekbones. The mask was really tight on his face, and the clothes." (App. 64).

The trial court judge noted that "under the Due Process clause, evidence of an identification of an accused must be excluded if the process used to obtain the identification was so unnecessarily suggestive as to give rise to a very substantial likelihood of misidentification." (App. 113). The trial judge noted he had to first determine whether the out-of-court identification process was unduly suggestive and, if so, whether the identification was nevertheless so reliable that no substantial likelihood of misidentification existed. (*Id.*) The trial court judge also noted the factors to determine reliability as outlined in *Neil v. Biggers*, 409 U.S. 188 (1972): (1) the witness' opportunity to view the

14

criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the witness' level of certainty at the confrontation; and (5) the time between the crime and the confrontation. (App. 114).

Applying these factors, the trial court judge found that based on the descriptions given by the victims, "the attention to detail is such that causes me to think that the opportunity to view the person was adequate." (App. 114-115).  The trial court judge stated that he was somewhat concerned by the fact that neither witness noted in their description that the blue shirt had writing or numbers on it. (App. 114).  However, he found the witness' description of the robber to be consistent with the petitioner and he noted that only a short time had lapsed between the crime and the identification. (App. 115; 116).  The trial judge noted the witnesses had an opportunity to view the robber and their testimony showed their degree of attention, prior description, and level of certainty. (App. 116).  The trial judge noted that the credibility of the identification could be attacked through cross-examination of the witnesses.  (App. 116.)  Based on the totality of the circumstances, he determined that the identification was reliable and denied the petitioner's motion to suppress.  (App. 117.)

On appeal, the South Carolina Court of Appeals held that the trial court judge did not abuse his discretion in denying the motion to suppress. The court noted that the issue was whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive.  Applying the factors from *Neil v. Biggers*, the court held that the identification was reliable under the totality of the circumstances and thus, the trial judge did not abuse its discretion in denying the petitioner's motion to suppress.  Specifically, the court noted that the witnesses testified that they saw the robber's face from the side before he pulled down the mask; they noticed he had high cheekbones; the robber was only a few feet from them during the robbery and he was in the store for ten to fifteen minutes; the time between the robbery and the identification was

15

only twenty to thirty minutes; and the witnesses' description of the robber and the petitioner's appearance were consistent.

It is clearly-established federal law that the Due Process Clause affords the accused the right to exclude identification testimony that results from unnecessarily suggestive procedures that may lead to an irreparably mistaken identification. *Neil v. Biggers,* 409 U.S. 188, 198 (1972). "First, the court must consider whether the identification procedure is unnecessarily suggestive." *Satcher v. Pruett,* 126 F.3d 561, 566 (4th Cir.1997). "A procedure is unnecessarily suggestive if a positive identification is likely to result from factors other than the witness's own recollection of the crime." *Id.* (internal quotation marks omitted). Second, the court must look at the five factors from *Neil v. Biggers* to determine if the identification testimony is nevertheless reliable under the totality of the circumstances. *Id*.

Certainly, the show-up may not be a favored procedure. *See Stovall v. Denno*, 388 U.S. 293 (1967). However, it is equally clear that the use of such a procedure does not necessarily violate due process; such a determination can only be made by reference to the totality of circumstances.  *Id.* at 302.

Here, the totality of the circumstances and all five of the *Biggers* factors support the state court's finding that the identification of the petitioner was sufficiently reliable.

1. The Opportunity to View. The witnesses had an adequate opportunity to view the perpetrator during the course of the robbery.  The robbery lasted ten to fifteen minutes and the robber and the victims were in close proximity during most of that time.  (App. 160; 164; 185-186.)  Because the robber wore a mask, the petitioner argues that the witnesses did not have ample opportunity to observe the robber's face.  Even if true, "height, weight and clothing are acceptable elements of identification" especially where, as here, "the confrontation takes place shortly after the crime when it may reasonably be inferred that the

suspect is dressed as he was at the time of the robbery." *Willis v. Garrsion,* 624 F.2d 491, 494-95 (4th Cir. 1980).

2. The Degree of Attention.   As victims, the witnesses unquestionably had an opportunity to observe the robber closely, and their attention was undivided for ten to fifteen minutes during the robbery. *See Mysholowsky v. New York*, 535 F.2d 194, 197 (2d Cir.1976) (stating that a victim of a crime is more likely than a casual bystander to pay close attention to the criminal's appearance); *Levasseur v. Pepe,* 70 F.3d 187, 195 (1st Cir.1995) (stating that a victim's "degree of attention during a traumatic experience is presumed to have been acute").

3. Accuracy of the Description.   The witnesses' description of the robber was accurate and consistent with the petitioner's appearance. They testified that the robber was a thin, black male and he was wearing a long, blue shirt, and dark pants. (App. 154; 163; 178; 180; 181; 187.) One of the witnesses testified that he may have been wearing jeans. (App. 164.)   They testified he had pulled down a tight, black mask over his face after he entered the store and he had prominent cheekbones. (App. 156; 182.)[3]

4. The Witness' Level of Certainty.   The witnesses testified at trial that they were certain of their identification.  Both witness repeatedly testified that they had no doubts that the petitioner was the robber.  (App. 156; 169; 183; 184; 192.)

5. The Time Between the Crime and Confrontation.  The witnesses' identification of the petitioner as the robber occurred approximately thirty minutes after the robbery. This short time frame weighs in favor of reliability. *Id.* at 494-95.

---

[3]The petitioner alleges that one of the witnesses did not mention that the perpetrator had prominent cheekbones until trial. (Pet'r's Mem. Opp. Summ. J. at 9.)  The undersigned notes that trial counsel presented argument about this in his closing argument.  (App. 320.)

While the identification procedure may have been suggestive since only one person was presented to the victim's, and while it was unnecessary since there was no emergency or exigent circumstance, there did not, under the totality of the circumstances, exist a substantial likelihood of irreparable misidentification.[4] Based on the foregoing, the undersigned finds that the state court's decision is not contrary to clearly-established federal law, and the decision was not unreasonable. The trial judge considered all of the factors in determining whether the identification evidence was reliable.   The state court did not unreasonably apply federal law to the petitioner's claim. Accordingly, this ground is without merit.

**Ground Two**

In the first issue raised in Ground Two, the petitioner alleges ineffective assistance of trial counsel because counsel allegedly failed to use an expert witness on identification.[5]

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United State Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test

---

[4]The petitioner also alleges that Robert Miller, his co-participant in the robbery, was granted a new trial because the South Carolina Supreme Court determined in Millers' appeal that the petitioner's identification was tainted. (Pet'r's mem. Opp. Summ. J. at 13-14.)  The petitioner and Miller were tried separately and Miller appealed his conviction raising the issue of the trial court's denial of an in camera hearing to challenge the witnesses' identification of the petitioner as the perpetrator.  In *State v. Miller*, the South Carolina Supreme Court held that Miller had standing to challenge the reliability of the identification of the petitioner and the trial court erred in failing to hold a hearing to allow Miller to challenge the petitioner's identification. 626 S.E.2d 328 (S.C. 2006).  The court noted that the fact the petitioner's identification had been upheld on appeal was irrelevant as to whether Miller was entitled to have an in camera hearing to challenge the petitioner's identification. Miller was not granted a new trial.  The case was remanded for an in camera hearing.  After the case was remanded, Miller pled guilty to accessory after the fact - armed robbery and he was sentenced to twelve years. (Resp't's Reply to Pet'r's Mem. Opp. Summ. J. at 2-3.)

[5]As noted above, the PCR court did not address the second issue raised in Ground Two (i.e. allegation of ineffective assistance of counsel for failing to investigate one of the eyewitnesses' twin sister) and thus this issue is procedurally barred and the undersigned will not discuss its merits.

18

requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id.* at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in *Strickland,* defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell,* 506 U.S. 364 (1993). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 689.

The PCR judge found trial counsel's testimony to be more credible than the petitioner's. (App. 425.) The PCR judge concluded that there was no merit to the allegation that trial counsel was ineffective for failing to retain an expert witness on identification. (App. 424.) The PCR judge noted that trial counsel testified that he did not even consider employing an expert witness in identifications. *Id.* Trial counsel testified that he focused on what he viewed as the best issue - to challenge the validity of the show-up procedure. (*Id.*) Further, the PCR judge found that the petitioner failed to prove that trial counsel's assessment of the arguable issues and his trial strategy was unreasonable. (App. 425.)

Failure to call an eyewitness identification expert does not automatically prejudice a defendant; counsel can effectively present the mistaken identity defense in other ways. *See Ford v. Cockrell,* 315 F.Supp.2d 831, 853 (W.D.Tex.2004) (no prejudice where counsel "persistently tried to cast the reliability of the identifications in doubt"); *see also United States v. Labansat,* 94 F.3d 527, 530 (9th Cir.1996) ("Any weaknesses in eyewitness identification testimony can ordinarily be revealed by counsel's careful cross-examination

19

of the eyewitnesses") (citation omitted); *United States v. Harris,* 995 F.2d 532, 535 (4th Cir.1993) (noting that "jurors using common sense and their faculties of observation can judge the credibility of an eyewitness identification, especially since deficiencies or inconsistencies in an eyewitness's testimony can be brought out with skillful cross-examination") (citation omitted).  As long as the defendant has an adequate opportunity to cross-examine eyewitnesses, the exclusion of expert testimony on the reliability of eyewitness identification is not error.  *Moore v. Tate,* 882 F.2d 1107, 1110-11 (6th Cir. 1989); *accord United States v. Hall*, 165 F.3d 1095, 1103 (7th Cir. 1999); *United States v. Harris,* 995 F.2d 532, 533 (4th Cir. 1993).  Here, trial counsel vigorously cross-examined the eyewitnesses on the identification and challenged the accuracy of the identifications they made.  Further, trial counsel stated he made a strategic decision to concentrate the admissibility of the identification.

As the PCR judge also held, the petitioner did not show any prejudice as the petitioner failed to show a reasonable probability that the outcome of the trial would have been different but for trial counsel's alleged deficient representation. *(Id*.)  *Dempsey v. State,* 369, 610 S.E.2d 812, 814 (S.C. 2005) ("A PCR applicant cannot show that he was prejudiced by counsel's failure to call a favorable witness to testify at trial if that witness does not later testify at the PCR hearing or otherwise offer testimony within the rules of evidence.").

Reviewing the record, the undersigned concluded that the petitioner has neither overcome the strong presumption that the conduct of counsel fell within a wide range of reasonable professional assistance nor shown that any deficiencies in counsel's performance prejudiced his defense.  *Strickland,* 466 U.S. at 689-694. Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of *Strickland.* Thus, this ground is without merit.

20

## IV.  <u>CONCLUSION</u>

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 10) be GRANTED; and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

March 30, 2009
Greenville, South Carolina


**The petitioner's attention is directed to the important notice on the next page.**

21

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).