# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tavo Glenn, #167193, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No.: 8:08- 3078-PMD-BHH |
| v. ) | |
| ) | |
| Jon Ozmint, and Warden of ) | |
| Lieber Correctional Institution, ) | **ORDER** |
| ) | |
| Respondents. ) | |
| _____) | |

This matter is before the court upon Petitioner Tavo Glenn's ("Petitioner") Objections to a United States Magistrate Judge's Report and Recommendation ("R&R") that Respondent's Motion for Summary Judgment be granted and that his petition pursuant to 28 U.S.C. § 2254 be dismissed. Having reviewed the entire record, including Petitioner's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

## BACKGROUND & PROCEDURAL HISTORY

### I. Factual Background

The underlying facts were set forth by the South Carolina Supreme Court in its opinion in Petitioner's co-defendant's appeal:

> About 4:00 p.m. on October 5, 2001, the Alltel Communications store on Floyd Baker Boulevard in Gaffney, South Carolina, was robbed. The perpetrator entered the store with his back to the store's two female employees. As he turned to face the employees, he pulled a black mask over his face, brandished a black handgun, and ordered the employees to fill a bag with money.

The two employees began filling the bag with money from one of the store's cash registers. Keys could not be found to the second cash register and the store safe was found to be empty. Realizing they would not be able to open the second register, the man took both employees into the back of the store and made them lie down on the floor. The employees did as instructed until they heard the front door buzzer. Assuming the robber had left the store, the employees went to the front of the store, locked the door, and called 911.

The robbery lasted approximately ten minutes and resulted in a little over four hundred dollars being stolen. When police arrived, the employees described the robber as a black male wearing a blue shirt and dark pants.

Shortly after beginning his 4:00 shift, Trooper Johnnie Godfrey was traveling on Floyd Baker Boulevard near the Alltel store when a vehicle came from his right and cut him off. Trooper Godfrey testified he turned on his blue lights and attempted to pull over the car for the purpose of issuing a warning for improper lane change and failure to yield the right-of-way. The car pulled into a parking lot, but did not stop, instead exiting on another street and heading up the interstate. A pursuit ensued involving officers from several law enforcement agencies.

The fleeing car sideswiped another car and turned off the interstate. A bystander testified she observed the chase and, as the car approached her, she saw a gun tossed from the passenger side window. An officer searched the area where the gun was allegedly thrown and retrieved a black handgun.

The chase ended after the car attempted to make a right turn and ran off the road into a field. The two occupants fled from the car. The driver of the vehicle was quickly apprehended and identified as respondent.

Respondent was placed in the back of Sergeant Mark Gooch's patrol car. Respondent remained in the car for roughly twenty minutes, while detectives and the crime scene unit responded to the scene. Sergeant Gooch testified that while en route to the detention center, respondent commented, "I heard someone say something about a robbery. I don't know anything about a robbery. I wasn't even near an Alltel store." Respondent also questioned what the crime scene officers were doing at the vehicle, and when the sergeant told him they were recovering evidence and asked respondent if he was worried about them finding his fingerprints on the gun, he stated, "my man had a gun." After hesitating, respondent then said, "if you will get a detective to talk to me, I'll tell them what they need to know." Officer Gooch stated that, while respondent was seated in the patrol car, he did not mention a robbery or any charges against him to respondent. He admitted, however, that his police radio was on while respondent was seated in the car, and he had discussed the robbery with other officers outside of the car.

> Trooper Godfrey testified he smelled an odor of alcohol on respondent and also suspected he had been using marijuana. Once respondent was transported to the local detention center, a DataMaster test was administered. Based on the DataMaster test, the trooper asked respondent to submit to a urine test and respondent refused. Trooper Godfrey charged respondent with driving under the influence and respondent subsequently pled guilty to the charge.
>
> The passenger from the vehicle was apprehended shortly after respondent and identified as Tavo Glenn. He was wearing a blue shirt and dark pants when apprehended. Glenn had several items in his possession when he was arrested, including a little over four hundred dollars, a pair of latex gloves, and eight to ten rounds of .380 caliber pistol ammunition. A search of the automobile produced a .380 caliber silver handgun, found under the passenger seat.
>
> Shortly after Glenn's apprehension, Officer Chris Skinner of the Gaffney Police Department arrived and instructed one of his officers to take Glenn back to the Alltel store to be identified. When Glenn arrived at the Alltel store, the officers took him out of the patrol car and placed him in front of the vehicle, twenty to twenty-five feet from the front door of the store. Glenn was handcuffed and was the only civilian in the area, standing among police officers. The two employees positively identified Glenn as the perpetrator of the robbery at that time and they reiterated that pre-trial identification at respondent's trial. Thereafter, both Glenn and respondent were charged with armed robbery.

*State v. Miller*, 367 S.C. 329, 331–33, 626 S.E.2d 328, 329–30 (2006) (footnote omitted).

## II. **Procedural Background**

In November 2001, Petitioner was indicted for carrying a pistol, and in January 2002, he was indicted for armed robbery. Petitioner was tried before a jury and convicted on both charges. He was sentenced to 30 years' imprisonment for the armed robbery and one year's imprisonment for the weapons charge, both sentences to run concurrently. Petitioner is currently incarcerated at the Lieber Correctional Institution. On appeal, Petitioner raised one issue: whether the single person show-up lineup used was unduly suggestive and conducive to irreparable mistaken identification. After the South Carolina Court of Appeals affirmed his convictions, Petitioner then filed for a writ of certiorari in the South Carolina Supreme Court, arguing that the court of appeals erred in affirming his convictions where a single person identification line-up was

allowed at trial that was unduly suggestive and conducive to irreparable mistaken identification. The Supreme Court denied the petition.

Petitioner then filed an application for post-conviction relief, alleging that his due process rights were violated because the identification was so unnecessarily suggestive and conducive to irreparable mistaken identification, and that both his trial counsel and appellate counsel provided ineffective assistance for various reasons. The PCR judge denied and dismissed with prejudice Petitioner's PCR application. Petitioner appealed the denial of his PCR application, but the South Carolina Court of Appeals denied his petition for a writ of certiorari. Finally, Petitioner filed this habeas action, raising the following grounds for relief:

> **Ground One:** Violation of due process. U.S.C.A. Const. Amend. 14. Denied due process at trial by admission of unreliable identification evidence.
>
> **Supporting Facts:** The procedure in this case was so unnecessarily suggestive and conducive to irreparable misidentification that petitioner was denied due process of law. Only one live suspect was used when two black males were arrested w/o being an emergency or exigent circumstances. Trial court thought evidence was sufficient for the jury rather than weighing corrupting effect of suggestive procedure, never ruling it to be reliable, then stating next time he'll rule differently, thus not proceeding consistently that fundamental fairness being essential to the concepts of justice.
>
> **Ground Two:** Ineffective Assistance of Counsel
>
> **Supporting Facts:** Trial Counsel failed to represent petitioner within the standard of professional reasonableness as required by defense attorney. Trial Counsel failed to employ an expert witness as requested by petitioner. Trial Counsel failed to investigate victims, whereas motion of discovery contained forms of one of the victim's twin sister with her signature.

(Petition at 6–7.) As to Petitioner's first ground for relief, the Magistrate Judge concluded that it is without merit because the state court's decision is not contrary to clearly-established federal law and because the decision was not unreasonable. As to Petitioner's second ground for relief, the Magistrate Judge concluded that it raised two grounds for ineffective assistance of counsel:

(1) failing to use an expert witness on identification; and (2) failing to investigate the victims of the robbery. The Magistrate Judge concluded that Petitioner's trial counsel was not ineffective for failing to hire an expert on identification and that the second issue raised by Petitioner in ground two of his Petition was procedurally barred from consideration. Therefore, the Magistrate Judge recommended the court grant Respondent's Motion for Summary Judgment.[1]

## STANDARD OF REVIEW

### I. Standard for Reviewing Magistrate Judge's R&R

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the court retains the responsibility for making a final determination. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). If a party makes a written objection to a Magistrate Judge's report within ten days of being served with a copy of that report, the court will review the specific objections *de novo*. 28 U.S.C. § 636(b)(1). The court is allowed to accept, reject, or modify the R&R in whole or in part. *Id*. Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id*. *Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a court is charged with liberally construing a complaint filed by a *pro se* litigant to allow for the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

---

[1] The person who has custody over a petitioner is the only proper respondent in a habeas corpus action. 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004) ("[I]n habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.") Therefore, the Magistrate Judge recommended Defendant Jon Ozmint be dismissed from this action. The court agrees and dismisses him from this suit.

## II. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## ANALYSIS

### I. Ground One for Relief

In ground one of his Petition, Petitioner asserts that his due process rights were violated by the admission of unreliable identification evidence. Specifically, Petitioner alleges the trial court erred by denying his motion to suppress the victims' identification of him as the perpetrator

of the robbery. The Magistrate Judge concluded that although the identification procedure may have been suggestive since only one person was presented to the victims for identification, under the totality of the circumstances, there did not exist a substantial likelihood of irreparable misidentification. Petitioner objects to this finding. He contends that "the Due Process Clause affords [him] the right to exclude identification testimony that resulted from an unnecessarily suggestive procedure that may lead to an irreparably mistaken identification" and that "a Due Process identification inquiry must take account of the suggestiveness of a confrontation and the likelihood that it led to the misidentification." (Objections 1–2.) Petitioner ultimately contends that since "the show-up procedure was unduly suggestive, [the] eyewitness[es'] identification were unreliable as a matter of law." (Objections at 2.)

Contrary to Petitioner's ultimate objection, the United States Supreme Court has declined to adopt a strict rule barring evidence of unnecessarily suggestive confrontations. *See Neil v. Biggers*, 409 U.S. 188, 199 (1970). Instead, the Due Process Clause requires the exclusion at trial of evidence of a pre-trial identification of a person if, based on the totality of the circumstances, the procedure used to obtain the identification was both (1) unnecessarily suggestive; *and* (2) conducive to mistaken identification. *Id.* at 199–200 (emphasis added). Thus, the Magistrate Judge correctly stated that although the identification procedure in Petitioner's case may have been unnecessarily suggestive, due process is not necessarily violated by the admission of the identification evidence at trial so long as under the totality of the circumstances the identification was still reliable. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). In determining the reliability of an identification, a court is to consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of

certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and confrontation. *Neil*, 409 U.S. at 199–200. It is against these factors that the court should weigh "the corrupting effect of the suggestive identification itself." *Brathwaite*, 432 U.S. at 114.

The trial court, the court of appeals, and the Magistrate Judge analyzed each of these factors and concluded that the identification of Petitioner was reliable and not subject to suppression. Since Petitioner did not specifically object to the Magistrate Judge's analysis of the factors set forth in *Neil* to determine the reliability of an identification, the court summarily reviews these factors. Both victims of the robbery had adequate opportunity to view the perpetrator during the course of the robbery, as the robbery lasted approximately 10 to 15 minutes, and the robber and the victims were in close proximity for most of that time. Despite the fact that the robber wore a mask, the victims also had the opportunity to view the height, weight, and clothing worn by the robber. *Willis v. Garrison*, 624 F.2d 491, 494–95 ("[H]eight, weight and clothing are acceptable elements of identification, and this is especially true when the confrontation takes place shortly after the crime when it may reasonably be inferred that the suspect is dressed as he was at the time of the robbery."). Both victims' description of the robber was accurate and consistent with Petitioner's appearance. They testified that the robber was a thin, black male and that he was wearing a long, blue shirt, and dark pants. One of the witnesses testified that the robber may have been wearing jeans and had prominent cheekbones. At trial, both victims testified that they were certain of their identification and repeatedly confirmed they had no doubts that Petitioner was the robber. The victims' identification of Petitioner as the robber occurred approximately 30 minutes after the robbery, and this short time frame weighs in favor of reliability.

Based on the foregoing, the court cannot say that the eyewitnesses' identification of Petitioner was so unnecessarily suggestive and conductive to irreparable identification that Petitioner was denied due process of law. The trial court considered all of the factors set forth by the United States Supreme Court in *Neil* and determined that the identification evidence was reliable. Its decision was not unreasonable nor contrary to clearly established federal law. Thus, the court grants Respondent's Motion for Summary Judgment as to Petitioner's first ground for relief.[2]

## II. Ground Two for Relief

In his second ground for relief, Petitioner contends that his trial counsel provided ineffective assistance of counsel when he (1) failed to use an expert witness on identification and (2) failed to investigate the victims of the robbery. As noted above, the Magistrate Judge concluded that trial counsel vigorously cross-examined the eyewitnesses on the identification and challenged the accuracy of the identifications they made; thus, the she concluded that the PCR court's decision that Petitioner's trial counsel did not provide ineffective assistance of counsel by not using an expert witness on identification was not contrary to, or an unreasonable application of, the *Strickland* standard. Petitioner did not object to this recommendation;

---

[2] In his Objections, Petitioner argues that the identification evidence presented during his trial is "tainted" because the South Carolina Supreme Court ruled that his co-defendant is entitled to an *in camera* hearing to challenge that same evidence and the Court would not remand his co-defendant's case for a motion to suppress hearing if they thought it would be unsuccessful. (Objections at 2.) The South Carolina Supreme Court did remand Petitioner's co-defendant's case because it found that he had standing to challenge the identification evidence relating to Petitioner since his defense was that he was with the Petitioner all day and they did not rob an Alltel store. *State v. Miller*, 367 S.C. 329, 626 S.E.2d 328 (2006). The Court ruled that the fact that Petitioner's "identification has been upheld on appeal is irrelevant to the question of whether [his co-defendant] is entitled to have an *in camera* hearing to determine whether [Petitioner's] show-up identification was properly conducted." *Id.* at 338, 626 S.E.2d at 332. The Court's ruling—that Petitioner's co-defendant has standing to challenge the identification evidence relating to Petitioner in an *in camera* hearing—has no bearing on the issues presented by Petitioner in his current Petition. Unlike his co-defendant, Petitioner did have a hearing, and as discussed above, the trial court and court of appeals determined that the identification evidence related to Petitioner was reliable enough to be admitted into evidence at his trial without offending his due process rights.

therefore, the court is not required to give any explanation for adopting it. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

The Magistrate Judge found that Petitioner's second ground for ineffective assistance of counsel was procedurally barred from consideration, and Petitioner makes a brief objection to this finding. He contends that he submitted the issue to the PCR court, and the PCR court failed to rule on the issue. As the Magistrate Judge explained in her R&R, Petitioner needed to file a Rule 59 motion and request the PCR court to rule on the issue as to whether or not Petitioner's trial counsel was ineffective for failing to investigate the victims of the robbery. The South Carolina Supreme Court has instructed: "After a hearing, the PCR court grants or denies relief by issuing a written order containing findings of fact and conclusions of law. Either party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order." *Al-Shabazz v. State*, 338 S.C. 354, 364–65, 527 S.E.2d 742, 747 (2000). Because the PCR court did not address this issue in its order of dismissal, the South Carolina Supreme Court would not have been able to review it. As such, this issue is barred from habeas review, unless Petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In his Objections, Petitioner appears to contend that he should not be barred from having the second issue of his ineffective assistance of counsel claim ruled on because the PCR court chose not to specifically rule on it. Since this does not allege sufficient cause and prejudice for the court to consider Petitioner's claim, the court finds this issue procedurally barred and grants Respondent's Motion for Summary Judgment as to Petitioner's second ground for relief.

## **CONCLUSION**

Based on the foregoing, it is **ORDERED** that Respondent's Motion for Summary Judgment is **GRANTED**, and Petitioner's § 2254 petition is **DISMISSED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**September 11, 2009**
**Charleston, SC**